UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DESIREE DELPIT, ET. AL

VERSUS

BATON ROUGE CITY POLICE, DIST. 2,
ET AL.

CIVIL ACTION

NO. 16-00026-JWD-EWD

**RULING**

Before the Court is a *Motion for Summary Judgment* ("Motion") filed by the City of Baton Rouge/Parish of East Baton Rouge ("City"), Lieutenant Donald Kelly ("Kelly"), Lieutenant Stephen Chenevert ("Chenevert"), Corporal Chase Ard ("Ard"), Officer Josh Kirst ("Kirst"), Officer Josh Gillich ("Gillich"), Officer Brandon Blackwell ("Blackwell"), Officer Geoffrey Wilkes ("Wilkes"), Officer Jory Guidry ("Guidry"), Officer Kent Hagge ("Hagge"), and Officer Peggy Hardy ("Hardy") (collectively referred to as "Defendants").[1] Plaintiff Desiree Delpit ("Plaintiff" or "Desiree") has filed a *Response in Opposing to Defendants/Counsel Motion for Summary Judgment* ("Opposition") to which the Defendants have filed a *Reply*.[2] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Oral argument is unnecessary. For the following reasons, the *Motion* shall be **GRANTED**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The factual background taken in the light most favorable to Plaintiff are as follows.

---

[1] Doc. 80. Defendants have also filed a Motion for Summary Judgment seeking dismissal of the claims asserted by Dexter Delpit (Doc. 81). The Court will deal with that *Motion* in a separate ruling.
[2] Doc. 96 and Doc. 101.

1

### A. *Events Leading Police to Plaintiff's Residence*

On January 16, 2015, Baton Rouge Police Officers Blackwell, Gillich, Guidry, Hagge, Kirst, and Wilkes proceeded to Plaintiff's home in response to a report of aggravated assault with a knife.[3] Earlier that day, Plaintiff's daughter Dazmin Granger ("Granger") went to the Baton Rouge 2nd District Precinct Police Station and reported to Blackwell that she had been assaulted by her brother, Dexter Delpit ("Dexter"), while standing outside of her mother's residence.[4] According to Granger, Dexter grabbed her phone and threw it to the ground after she refused his command to go inside the house.[5] Granger told Blackwell that Dexter threatened to kill her by getting a knife from inside the house and placing it against her throat.[6] Granger was accompanied by her sister, Dymon Delpit ("Dymon"), who also informed Blackwell that she too had been a victim of past verbal and physical abuse from both Dexter and Plaintiff.[7]

Blackwell indicated that he found both Granger and Dymon to be of sound mind and that, based upon their statements, he believed that he had probable cause to arrest Dexter for aggravated assault.[8] After running Dexter's name through a criminal history database, Blackwell learned that Dexter had multiple prior arrests in recent years, several of which were for charges that were violent in nature.[9] These arrests included: (1) Criminal Damage to Property in 2007; (2) Aggravated Burglary, Forcible Rape, Illegal Carrying of Weapons, and Driving While Intoxicated ("DWI") in 2008; (3) DWI, Resisting

---

[3] Doc. 80-4 at 1; Doc. 80-5 at 1; Doc. 80-6 at 1; Doc. 80-7 at 1; Doc. 80-8 at 1; Doc. 80-9 at 1; Doc. 80-10 at 1.
[4] Doc. 80-14 at 4.
[5] Doc. 80-14 at 2-7; Doc. 80-4 at 1.
[6] *Id.*
[7] Doc. 80-15 at 9, 15; Doc. 80-4 at 2.
[8] Doc. 80-4 at 2.
[9] *Id.*

2

an Officer, Battery of an Officer, Criminal Damage to Property in 2010; (4) Possession of Schedule I Drugs, Illegal Use of Weapons, Illegal Carrying of a Weapon, and Drug Paraphernalia in 2011; (5) Disturbing the Peace and Resisting an Officer in 2012; and, (6) Armed Robbery and First Degree Murder, also in 2012.[10]

Blackwell indicated that he determined that, in order to prevent physical harm to Granger, Dexter's immediate arrest was required.[11] Blackwell based his determination on several factors, including Dexter's extensive previous arrest record, the fact that Granger was living at her mother's residence with Dexter at the time of the events in question, and the violent nature of the alleged crime.[12] Blackwell indicated that he also requested the assistance of additional officers in order to peaceably effect Dexter's arrest in light of the aforementioned circumstances.[13]

### B. *Gillich and Blackwell Attempt to Seize Dexter*

Baton Rouge Police Officers Blackwell, Gillich, Guidry, Hagge, Kirst, and Wilkes arrived at Plaintiff's residence later that evening sometime after 9:00 p.m.[14] Gillich concedes to making the initial contact by knocking on the Plaintiff's front door.[15] According to his sworn affidavit, Gillich stated that when Plaintiff opened the front door, he was immediately able to see Dexter in the living room, moving toward the front door and stopping at the threshold of the doorway.[16]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] Doc. 80-5 at 1; Doc. 80-16 at 2.
[16] Doc. 80-5 at 1.

3

Gillich attests that he ordered Dexter to turn around with his hands behind his back and proceed outside of the Plaintiff's residence.[17] Gillich stated that he took hold of Dexter once Dexter began to back away from the front door in what Gillich identified as an attempt not to be seized.[18] Gillich admits that, while attempting to seize Dexter, he eventually pinned him upright against the wall on the front porch.[19] Gillich alleges that Dexter subsequently began actively resisting by pushing off of him and pulling his arm away.[20] Gillich stated that because of Dexter's resistance, he pushed him up against the wall again in order to gain control of Dexter.[21] Blackwell, who had been observing Gillich's attempt to seize Dexter, intervened and proceeded to assist by holding Dexter's head against the wall of the residence.[22]

### C. *First Interaction with Plaintiff*

Plaintiff concedes that, while Gillich and Blackwell were attempting to restrain Dexter on the front porch, she proceeded to step out of the front door in an attempt to question the officers' actions.[23] Blackwell stated that because they were in the middle of an altercation with Dexter, and because the Plaintiff was reacting in an emotional and angry manner, he ordered Plaintiff to go back inside the house.[24] Plaintiff ignored Blackwell's order and continued to try and intercede in the officers' attempt to seize Dexter.[25] Plaintiff aggressively questioned the officers' actions in close proximity to

---

[17] *Id.*
[18] Doc. 80-5 at 2.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] Doc. 80-4 at 2.
[23] Doc. 80-16 at 3-5; Doc. 80-4 at 2.
[24] Doc. 80-4 at 2.
[25] *Id.* at 3.

4

them.[26]  Blackwell admits that he then pushed Plaintiff inside the residence and closed the door.[27]

Gillich alleges that because Dexter continued to resist any attempt of a peaceable seize, he was forced to initiate a take-down maneuver in an attempt to control Dexter and place him in handcuffs.  Guidry, who was initially positioned at the back of the residence, proceeded to the front porch where he observed Gillich and Blackwell attempting to restrain Dexter.  According to his sworn affidavit, Guidry observed Dexter actively resisting arrest by pulling his hands away and trying to move while he was on the ground.  At this point, Guidry attempted to assist Gillich and Blackwell by cradling Dexter's head in order to prevent it from moving and protecting it from injury.  With Guidry's assistance, the officers were able to place handcuffs on Dexter while he was on the front porch.  Once Dexter was restrained in handcuffs, Gillich and Blackwell began to escort him to Blackwell's police vehicle.

### D.  *Second Interaction with Plaintiff*

According to Guidry's testimony, as Dexter was being escorted by Gillich and Blackwell, the front door of the residence swung open in an aggressive manner.[28]  Guidry stated that he instructed Plaintiff, as well as other unidentified individuals inside the home, to stay inside for security reasons.[29]  Guidry alleged that Plaintiff disregarded his instructions to stay inside and began following Gillich and Blackwell as they escorted Dexter to the police vehicle, confronting them in an angry manner.[30]  Plaintiff alleges that

---

[26] *Id.*
[27] *Id.*
[28] Doc. 80-6 at 2.
[29] *Id.*
[30] *Id.*

5

she was again pushed while in her yard by the same officer who initially pushed her—presumably Blackwell—although all officers deny this allegation.[31] Plaintiff later testified that the push caused her to step back, which then caused her to trip and fall over a tree root.[32] Plaintiff also testified that she was wearing slippers at the time she was allegedly pushed.[33]

### E. *Procedural History*

On January 13, 2016, Plaintiff, along with her son Dexter, filed this *pro se* action against Defendants seeking damages under 42 U.S.C. § 1983 for false arrest and use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and other provisions of Louisiana state law.[34] While the specific causes of action do not specify which claims are brought under which capacities, in the absence of any evidence to the contrary, the Court, in deciding this Motion for Summary Judgment, presumes that the causes of action against named Defendants in the Complaint are brought in both individual and official capacities.[35]

## II. Discussion

### A. Rule 56 Legal Standard

Rule 56 sets forth the standard applicable to the Motion. Per Rule 56(a), summary judgment is generally appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] A dispute

---

[31] Doc. 80-16 at 8.
[32] *Id.* at 9.
[33] *Id.* at 8.
[34] Doc. 1.
[35] *Senu-Oke v. Jackson State Univ.*, 521 F.Supp.2d 551, 556 (S.D.Miss.2007) (holding "[i]n the Fifth Circuit…if it is not clear from the allegations of the complaint whether a defendant has been sued in his official or individual capacity, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued.").
[36] Fed. R. Civ. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)).

is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law."[37]

Axiomatically, a court construes all facts and evidence in the light most favorable to the nonmovant.[38] In response to another's motion, the nonmovant cannot rely on "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments."[39] While the court will "apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel,"[40] the "evidentiary requirements of summary judgment apply equally to *pro se* litigants as they do to represented parties."[41] Thus, in the Fifth Circuit, *pro se* litigants may not oppose summary judgments by the use of unsworn materials."[42]

Still, "[w]hen both parties have submitted evidence of contradictory facts,"[43] a court is bound to "draw all reasonable inferences in favor of the nonmoving party" and cannot "make credibility determinations or weigh the evidence."[44] Thus, this Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses."[45] To wit, although this Court "should review the

---

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also *Ray v. United Parcel Serv.*, 587 Fed.Appx. 182, 186 (5th Cir. 2013) (citing *id.*).
[38] *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).
[39] *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).
[40] *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam).
[41] *Jackson v. State Farm Fire & Casualty Co.*, 2010 WL 724108 (E.D. La. February 22, 2010).
[42] *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).
[43] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).
[44] *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000); see also *Anderson*, 477 U.S. at 248 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinning of [factual disputes]").
[45] 9A C.Wright & A. Miller, Federal Practice and Procedure § 2529 (2d. ed. 1995).

record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."[46] Within the narrow ambit of Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial or frivolous, factual disputes that may affect the outcome of the case under the applicable substantive law,[47] and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "a scintilla of evidence."[48]

### B. Parties' Arguments

Defendants argue that the Court should grant summary judgment in their favor because Plaintiff's § 1983 claim is barred from recovery under the doctrine of qualified immunity.[49] Defendants further argue that Plaintiff's claim against Baton Rouge Second District Police Department should be dismissed because it is not a legal entity capable of being sued, or alternatively, because Plaintiff has failed to establish the requisite failure to train or supervise claim, necessary to recover money damages when a deprivation of a federally protected right is caused by an action taken pursuant to an official municipal policy.[50]

In her *Opposition* to Defendants' *Motion*, Plaintiff restates many of the facts giving rise to the events in question and reasserts her claims of excessive force against the Defendant Officers as well as the City of Baton Rouge, false arrest, and state law claims

---

[46] *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110, *cited in Havera*, 723 F.3d at 591.
[47] *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.
[48] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotation marks omitted) (citing, among others, *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 94-95 (5th Cir. 1994); and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)).
[49] Doc. 80-1.
[50] *Id.* at 13-14.

of Intentional Infliction of Emotional Distress.[51]  Plaintiff also seeks relief in the form of disciplinary action and/or charges filed against Defendants.[52]

### C. Analysis and Application

### I.   Excessive Force Claims

The primary (but not only) issue raised in Defendants' Motion for Summary Judgment is whether or not Blackwell is entitled to qualified immunity for allegedly pushing Plaintiff during the course of Dexter's arrest.  While Blackwell admits that he made physical contact with Plaintiff while she was on the porch of the house, the parties dispute whether or not additional contact was made while the Plaintiff was in the yard, and the Court finds that this fact is genuinely in dispute.

### A. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[53]  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[54]

Courts are instructed to apply "a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity."[55]  First, the court must "determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights."[56]

---

[51] Doc. 96 at 1-3.
[52] *Id.* at 4-6.
[53] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[54] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[55] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).
[56] *Id.*

If the court determines that the plaintiff's constitutional rights were violated, it must next consider "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."[57] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[58] At the heart of this inquiry is "whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."[59] The court "must evaluate an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[60]

The Court must "make two 'overlapping objective reasonableness inquiries'" when analyzing a claim of qualified immunity in excessive force cases.[61] According to the Fifth Circuit:

> Allegations that an officer used excessive force in conducting a seizure complicates the *Saucier* inquiry. This complexity stems from having to make two overlapping objective reasonableness inquir[ies]. We must first answer the constitutional violation question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement…If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was

---

[57] *Id.* at 411.
[58] *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).
[59] *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).
[60] *Poole v. City of Shreveport*, 691 F.3d 624, 627-28 (5th Cir. 2012) (quoting *Graham,* 490 U.S. at 396).
[61] *Sanchez v. Fraley*, No. 09-50821, 2010 WL 1752123, at *2 (5th Cir. Apr. 30, 2010) (unpublished) (quoting *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409-10 (5th Cir. 2009)).

reasonable. Despite any seeming similarity between these two questions, they are distinct inquiries under *Saucier*, and we must conduct them both."[62]

When a qualified immunity defense is invoked, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.[63] In countering a motion for summary judgment, "the plaintiff can no longer rest on the pleadings…and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry."[64] Although the court is to view all facts in a light most favorable to plaintiffs, the burden remains on plaintiffs "to negate the [qualified immunity] defense once properly raised."[65]

### B. Whether Blackwell's Conduct Violated the Fourth Amendment

The Fourth Amendment of the United States Constitution guarantees citizens the right from unreasonable searches and seizures.[66] In order to determine that Blackwell violated Plaintiff's Fourth Amendment rights by use of excessive force, Plaintiff must establish that she suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[67] "Assessing the reasonableness of a police officer's use of force involves 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake.'"[68]

---

[62] *Lytle*, 560 F.3d at 410.
[63] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (citing *Bazan ex. rel. Bazan v. Hidalgo Cnty*, 246 F.3d 481, 489 (5th Cir. 2001)).
[64] *Id.* at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)) (omission in original).
[65] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).
[66] U.S. Const. Amend. IV.
[67] *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).
[68] *Lytle*, 560 F.3d at 411 (quoting *Graham*, 490 U.S. at 396) (internal quotation omitted).

Courts in the Fifth Circuit have considered several factors when assessing the reasonableness, including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest."[69] "[W]e must balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case."[70]

The Supreme Court has made clear that an objective standard of analysis—one that does not take into account subjective intent—is used when evaluating an officers actions.[71] The Court has also held that government officers are also entitled to deference:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight…The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgment in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.[72]

### i. Plaintiff's First Excessive Force Claim: Front Porch of Residence

Turning to the undisputed facts of this case, it is clear that Blackwell knew he was responding to a potentially dangerous crime scene where the suspect was reported to have attacked his sister with a deadly weapon earlier that same day. The mere fact that Blackwell was also one of a team of six responding officers to the scene is another indication of the Defendant's objective belief of the threat that the suspect posed to their safety. The evidence also indicates that Plaintiff failed to comply with Blackwell's instructions to get back inside the house. According to Plaintiff's own testimony, she was

---

[69] *Hill v. Carroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009) (citing *Graham*, 490 U.S. at 396).
[70] *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399) (internal quotation marks and citations omitted).
[71] *Graham*, 490 U.S. at 397.
[72] *Id.*

12

emotional, angry, and in very close proximity to the officers—who were in the process of seizing the suspect—when she ignored the officer's request and attempted to intercede in the arrest.[73]

The threat of Plaintiff approaching from a distance of approximately five to ten feet presented an immediate risk of serious harm to Blackwell and others. A reasonable officer in this situation would have had reason to believe that Plaintiff was in a position to interfere with the suspect's arrest, threatening serious harm to the safety of the officers or others present at the scene. Because this Court finds that Blackwell's use of force was justified by Plaintiff's failure to comply with his instruction, which presented a distraction to the officers' attempt to restrain a dangerous suspect and presented an immediate danger to the safety of all who were present, the Court does not find that Blackwell's conduct violated the Fourth Amendment.

ii. **Plaintiff's Second Excessive Force Claim: Front Lawn of Residence**

Plaintiff alleges that she was pushed for a second time in the front lawn of her residence by the same officer who initially pushed her on the porch. While Defendants deny this allegation, they nonetheless contend that, for similar reasons as stated above, this claim would also be barred by qualified immunity. Alternatively, Defendants also argue that Plaintiff has failed to provide any evidence that she suffered an injury directly and only as a result of this alleged act.

The evidence does raise a genuine dispute of material fact as to whether or not Plaintiff was pushed by Blackwell a second time on her front lawn. However, the Court also finds that even if the allegation against Blackwell is taken as true, the use of such

---

[73] See Doc. 80-16 at 3-7.

force was not excessive or unreasonable in light of the circumstances. The evidence shows that Plaintiff was instructed several times by Guidry to stay inside while the officers sought to detain Dexter. Plaintiff's own testimony indicates that Plaintiff ignored the officer's commands and proceeded to follow the officers into the yard, attempting to interfere with Dexter's arrest.[74] The Court finds that Blackwell's use of force was justified by Plaintiff's failure to comply with his instruction, which presented a distraction to the officers attempt to restrain a dangerous suspect and presented an immediate danger to the safety of all who were present. For reasons similar to the Plaintiff's excessive force claim above, the Court finds that Blackwell's conduct did not violate the Fourth Amendment, and Plaintiff's claim is barred by qualified immunity.

### C. Whether the Law Was Sufficiently Clear That A Reasonable Officer Would Have Known that Pushing Plaintiff Violated the Constitution

Defendants' argue that even if Blackwell's conduct violated the Fourth Amendment, a reasonable officer in his position would not have known that using this type of force was unlawful in light of clearly established law. The Court agrees and finds that the Fifth Circuit has previously held that the same type of conduct by a police officers (i.e. pushing individuals to keep them inside a residence and away from an investigation) is reasonable conduct.

The court's holding in *Castera Robles v. Cayton* is particularly instructive.[75] In *Castera Robles*, a non-English speaking woman was wrongfully suspected of drug dealing after receiving an erroneous tip from a confidential informant as part of a police investigation. The suspect's husband filed an excessive force claim against the police

---

[74] See Doc. 80-16 at 6-9.
[75] *Castera Robles*, 454 Fed.Appx. 373, 379 (5th Cir. 2011) (unpublished).

officers alleging that he was shoved back into his hotel room after the suspect was taken from the room by police for interrogation. Eventually the police officers released the suspect and left the hotel. The Fifth Circuit held that the plaintiff husband did not raise a genuine issue of material fact as to how the force used was either clearly excessive or clearly unreasonable in light of the officers' compelling interest in preventing any further interference with their investigation. The court explained:

> As her family members sought to involve themselves in the investigation, the Officers prevented them from approaching Robles and from leaving their rooms. It was not unreasonable or excessive force to prevent interference with the investigation by pushing individuals to keep them inside their rooms and away from the investigation…Therefore, the district court correctly granted summary judgment on the basis of qualified immunity on the claims of excessive force.[76]

Like the suspect's husband in *Castera Robles*, the Plaintiff was attempting to involve herself in the investigation and detention of a family member who was also a suspected offender. Both claims of excessive force stem from incidents in which the plaintiff claims to have been pushed by a police officer to keep them away from the investigation. Here, as with the plaintiff in *Castera Robles*, Plaintiff has not raised a genuine issue of material fact as to how the force used was either "clearly excessive" or clearly unreasonable" in light of the Officer's belief that Plaintiff was attempting to interfere with Dexter's arrest. For these reasons, it would not have been clear to a reasonable officer that using enough force in the particular circumstances of this case involving the arrest from a dangerous suspect. Accordingly, Blackwell is entitled to qualified immunity and summary judgment as to the claims of excessive force, therefore the Defendant's *Motion* shall be **GRANTED**.

---

[76] *Id.*

## II. Remaining Claims

### A. Plaintiff's Claims Against Remaining Officers

Plaintiff alleges excessive force claims not only against Blackwell, but against all officers named as Defendants in this lawsuit. The record indicates that Officers Kelly, Hardy, Chenevert, and Ard were not present at the scene of the incident in question and had no physical contact with Plaintiff. Additionally, while Officers Kirst, Guidry, Gillich, Wilkes, and Hagee were present at the scene of the incident, the record indicates that none of these officers had any physical contact with Plaintiff. Accordingly, Plaintiff's Section 1983 claims of excessive force against Kelly, Hardy, Chenevert, Ard, Kirst, Guidry, Gillich, Wilkes, and Hagee are without merit and are hereby dismissed.

### B. Plaintiff's Section 1983 Claims Against the City/Parish

Defendants contend that the Second District Police Department is not a legal entity capable of being sued, thus Plaintiff's claims against this Defendant should be dismissed. The Court agrees that the Second District Police Department is not a proper party to this lawsuit and dismisses Plaintiff's claims against it. Moreover, even if Plaintiff had named a proper political subdivision or supervisory official as a defendant, because this Court has already found that Blackwell did not violate Plaintiff's constitutional right to be free from excessive force, Plaintiff cannot establish a claim of failure to train or supervise under Section 1983 by a municipality.[77] Accordingly, Plaintiff's Section 1983 claims against the City and/or Parish should be dismissed and Defendants' *Motion* shall be **GRANTED**.

---

[77] See *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (holding that a municipality may not be held liable under Section 1983 where no constitutional depravation has occurred); *Elizondo v. Green*, 671 F.3d 506- 510-11 (5th Cir. 2012); *Foster v. Carroll Cnty.*, No. 11-60726, 2012 WL 5398190, at *2 (5th Cir. Nov. 6, 2012) (unpublished); see also *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 426 (5th Cir. 2006) ("We have held that we 'use the same standard in assessing an individual supervisor's liability under Section 1983 as that used in assessing a municipality's liability' thereunder.") (quoting *Doe v. Taylor ISD*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).

### C. Plaintiff's False Arrest Claim

Plaintiff asserts a claim of false arrest against Defendants.[78] Plaintiff conclusively contends that "[a]ll of the charges the police wrote up on Dexter Delpit are false charges. It's a crime to falsely accuse someone of crime that they didn't commit."[79]

Louisiana state law recognizes the tort of false arrest, also known as false imprisonment.[80] In order for a plaintiff to recover for false arrest, he or she must prove two elements: (1) detention of a person, and (2) unlawfulness of the detention.[81] "If police officers act pursuant to statutory authority when they arrest and incarcerate a citizen, they are not liable to damages for false arrest and imprisonment. As long as the officers reasonably believed the statute upon which they relied was valid at the time they acted, the law exempts the officers from liability even if the statute should later be declared unconstitutional."[82]

Here, since Plaintiff was not arrested, she has not sufficiently stated a claim for false arrest or false imprisonment. Accordingly, Defendants' *Motion* is **GRANTED** and any of Plaintiff's claims related to false arrest or false imprisonment are hereby dismissed.

### D. Plaintiff's Relief In The Form of Disciplinary Action and/or Criminal Charges

Plaintiff seeks relief in the form of disciplinary action and/or criminal charges against Defendants. Because Plaintiff has not cited any legal basis supporting these

---

[78] Doc. 1.
[79] Doc. 16 at 2.
[80] *Alvarado v. Poche*, 2002-2 (La.App.3d Cir. 6/5/02), 819 So.2d 1150, 1152, writ den., 2002-2212 (La. 11/8/02), 828 So.2d 1120.
[81] *Dumas v. City of New Orleans*, 2001-0448 (La.App. 4th Cir. 1992), writ den., 595 So.2d 658 (La.1992).
[82] *Winbush v. Hilton*, No. CV-07-0194, 2008 WL 5582437 (W.D. La. 2008) (citing *Cooks v. Rodenbeck*, 1997-1389 (La.App. 3d Cir. 4/29/98), 711 So.2d 444, 447) (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977).

claims for relief, the Defendants' Motion is **GRANTED** and these claims are hereby dismissed.

### E. Plaintiff's State Law Claims

Having determined that Plaintiff's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[83] In the Fifth Circuit, the general rule is that when a court dismisses all federal claims before trial, it may dismiss any supplemental claims.[84] Additionally, "the Supreme Court has counseled that the dismissal of all federal claims weighs heavily in favor of declining jurisdiction."[85] "However, the dismissal of the [supplemental] claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court."[86] Accordingly, in consideration of the interests of judicial economy, fairness to the litigants, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and Defendants' Motion to Dismiss Plaintiff's remaining state law claims is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' *Motion for Summary Judgment*[87] is **GRANTED**. Plaintiffs' § 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's false arrest claim against Defendants are **DISMISSED WITH PREJUDICE**.

---

[83] 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction.").
[84] See *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).
[85] *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998), (*overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)).
[86] *Bass*, 180 F.3d at 246.
[87] Doc. 80.

**IT IS FURTHER ORDERED** that Plaintiff's stated claims seeking relief in the form of disciplinary action and/or criminal charges against Defendants are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on June 21, 2018.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**